UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:18-CR-104 JD |
| JEFFREY E. STONEBURNER II | |

**OPINION AND ORDER**

Jeffrey Stoneburner II is serving a 78-month sentence in federal prison for transporting child pornography. He moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing his medical health and the alleged lack of treatment at the Bureau of Prisons ("BOP"). The Government has objected to his motion on the grounds that Mr. Stoneburner has not exhausted his administrative remedies and has not shown extraordinary and compelling reasons warranting an early release. Although the Court finds that the BOP waived the exhaustion defense, for the reasons explained below, the Court will deny Mr. Stoneburner's motion.

**A. Background**

In 2019, Mr. Stoneburner pleaded guilty to transporting child pornography, and the Court sentenced him to 78 of imprisonment. He's being held at the Loretto Federal Correction Institution and his projected release date is April 7, 2025. *See* https://www.bop.gov/inmateloc/ (last visited August 28, 2024).

On September 25, 2023, Mr. Stoneburner submitted to the Warden of Loretto FCI a request for compassionate release. He claimed a "Debilitated Medical Condition" which he described as the diagnosis of basal cell carcinoma behind his left ear in April 2023, which had

not yet been treated. (DE 64-3 at 2.) He also complained of elevated liver enzymes and of a "stricture" in his bile duct that a specialist wants to examine for cancer.

On October 17, 2023, the Warden responded, denying Mr. Stoneburner's petition and advising that he could directly appeal to this Court:

> A thorough review of your request was completed utilizing Program Statement 5050.50, Compassionate Release/Reduction in Sentence. The review prepared in your case indicates you are not currently diagnosed with an incurable, progressive illness, and have not suffered from a debilitating injury from which you will not recover. Additionally, you are not completely disabled, meaning you can carry on self-care and you are not totally confined to a bed or chair [for] more than 50% of waking hours. You do not have a diagnosis of cognitive deficit, which affects your mental capacity for function. You are not diagnosed with a severe physical impairment. Based on this information, you are not eligible for a Compassionate Release due to a Debilitated Medical Condition.
>
> Accordingly, your request for Compassionate Release/Reduction in Sentence is denied. If you are dissatisfied with this response, the First Step Act allows you to file an appeal directly to the Sentencing Court 30 days after requesting compassionate release from the Warden without utilizing and/or exhausting the Administrative Remedy process. You may also appeal through the Administrative Remedy Program.

(Warden's Resp., DE 64-3 at 4.)

On November 15, 2023, Mr. Stoneburner filed his motion with this Court. In the motion, Mr. Stoneburner restates the grounds he advanced before the Warden.

**B. Legal Standard**

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, as relevant here, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commission, and the defendant has submitted such a request to the

2

warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the BOP. 18 U.S.C. § 3582(c)(1)(A).

The analysis on compassionate release proceeds in two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). At the first step the defendant must identify an extraordinary and compelling reason warranting a sentence reduction. *Id.* If the defendant establishes such a reason, the district court, in the discretion conferred by the statute, considers any applicable § 3553(a) factors as part of determining what, if any, reduction to award the defendant. *Id.* The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Curren*, 2023 U.S. Dist. LEXIS 90170, *5 (S.D. Ill. May 23, 2023) (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)).

The policy statements to the Sentencing Guidelines offer circumstances, or their combination, for the existence of extraordinary and compelling reasons:

(1) Medical Circumstances of the Defendant.—

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
>> (i) suffering from a serious physical or medical condition,
>>
>> (ii) suffering from a serious functional or cognitive impairment, or
>>
>> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1).

Other circumstances include an outbreak of an infectious disease at the prison where the defendant is housed and the defendant is at an increased risk of suffering severe medical complications or death as a result; advanced age of the defendant when he has served a significant period of his sentence; family circumstances of the defendant, such as the death or incapacitation of the caregiver of the defendant's minor children, incapacitation of the defendant's spouse or parent, where the defendant would be the only available caregiver; or the defendant was a victim of sexual or physical abuse while in custody. U.S.S.G. § 1B1.13(b)(2)–(4).

The examples also include "other reasons," that is, where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons" just listed, are similar in gravity to those circumstances. § 1B1.13(b)(5).

The defendant's rehabilitation is not, by itself, an extraordinary and compelling reason:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

§ 1B1.13(d).[1]

---

[1] In addition, subsection (b)(6) posits that an unusually long sentence can be an extraordinary and compelling reason for an early release:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity

4

**C. Discussion**

Having reviewed Mr. Stoneburner's motion, the Court finds that he has not established an extraordinary and compelling reason for modifying his sentence. But before explaining its reasoning, the Court must first address the question of exhaustion of administrative remedies.

The Government claims that Mr. Stoneburner failed to exhaust the administrative remedies because he did not appeal the Warden's denial of his petition to the Regional Director, and then, if still unsatisfied, to the Office of General Counsel. The Government points to 28 C.F.R. §§ 542.14 and 542.15 as mandating such a process and argues that his motion should be denied outright for lack of exhaustion. While §§ 542.14 and 542.15 do prescribe an internal appeals process as described by the Government, the Warden's own response to Mr. Stoneburner's petition makes clear that the BOP has waived this requirement here:

> Accordingly, your request for Compassionate Release/Reduction in Sentence is denied. If you are dissatisfied with this response, *the First Step Act allows you to file an appeal directly to the Sentencing Court 30 days after requesting compassionate release from the Warden without utilizing and/or exhausting the Administrative Remedy process. You may also appeal through the Administrative Remedy Program.*[2]

---

between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6). In *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), the Seventh Circuit held that the discretionary sentencing reduction authority conferred by 18 U.S.C.S. § 3582(c)(1)(A) did not permit, without a district court finding some independent extraordinary or compelling reason, the reduction of sentences lawfully imposed before the effective date of the First Step Act's amendment to § 924(c). Since then, the district courts have split whether the Seventh Circuit is likely to find that the Sentencing Commission exceeded its authority in issuing § 1B1.13(b)(6). *See United States v. Buggs*, 2024 U.S. Dist. Lexis 85855 (N.D. Ind. May 13, 2024) (finding that "§ 1B1.13(b)(6) does not serve as a basis for compassionate release and discussing the circuit split as seen in *United States v. Black*, No. 05-CR-70-4, 2024 WL 449940 (N.D. Ill. Feb 6, 2024), and *United States v. Spradley*, No. 1:98-CR-38, 2024 WL 1702873 (S.D. Ind. April 18, 2024)). The Court here, however, need not enter the debate because Mr. Stoneburner has not asked for relief under subsection (b)(6), and his overall sentence was 78 months of imprisonment, making the subsection inapplicable.

[2] Although the Government cites in its brief the Warden's response in full, it has omitted the two italicized sentences.

(Warden's Resp., DE 64-3 at 4 (emphasis added).) The Warden's response unambiguously states that it was optional for Mr. Stoneburner to continue with the internal appeals rather than proceeding in this Court. The Court thus finds that the Government cannot enforce the exhaustion prerequisite because the BOP explicitly waived it in its response to Mr. Stoneburner's request for compassionate release. *Cf. United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021) (the exhaustion requirement is not jurisdictional and can be waived by the government). Accordingly, the Court can consider Mr. Stoneburner's motion.

But the motion lacks merit as it presents no extraordinary and compelling reasons warranting a reduction in Mr. Stoneburner's sentence. Although Mr. Stoneburner claims to suffer several medical conditions that allegedly are not being properly addressed by the BOP, none of them fall within the realm contemplated by the sentencing guidelines or are "similar in gravity."

For example, Mr. Stoneburner states that he has been diagnosed with basal cell carcinoma. This appears to be a serious health condition if left untreated, but nothing in the record suggests that this is a terminal diagnosis or that Mr. Stoneburner is suffering a debilitating condition because of his illness. "Basal cell carcinoma is a type of skin cancer that occurs when there is damage to the DNA of basal cells in the top layer, or epidermis, or the skin." Basal Cell Carcinoma (BCC), https://www.yalemedicine.org/conditions/basal-cell-carcinoma (last visited September 4, 2024). Even so, "[b]asal cell carcinoma spreads very slowly and very rarely will metastasize . . . ." *Id*. And while this condition can cause significant destruction to surrounding tissues and can become fatal, *see id.*, Mr. Stoneburner has provided no evidence that his malady presents such complications.

Next, Mr. Stoneburner states that he is suffering from a liver disease, but here, too, he has not shown that his illness is terminal or debilitating. He fears his condition may be cancerous but

presents no evidence that it actually is, or that it cannot be treated. His medical records from August 2023 show that he needed a surgical consult to rule out a malignancy (Gov't Exh. 1 at 12, 44) but the condition was described as "non-emergent" (*Id*. at 44). Following the consultation, the surgeon described his ailment as "asymptomatic with ulcerative colitis well controlled on adalimumab." (De 64-3 at 27.) While it does appear that as of February 2024 there was still no definite diagnosis and Mr. Stoneburner was sent to a doctor who was not equipped for an expected procedure (*see* Stoneburner Supplement, DE 74), the overall medical record shows no extraordinary and compelling reasons for release. Likewise, in his supplemental filing, Mr. Stoneburner suggests that he was told to see a liver transplant specialist. (*Id*.) That said, Mr. Stoneburner has not supplemented his filing with new medical records, and nothing before the Court suggests that Mr. Stoneburner may need a liver transplant. In any case, a referral to a specialist does not by itself establish that Mr. Stoneburner needs a new liver.

Finally, Mr. Stoneburner complains of essential (primary) hypertension[3] and ulcerative colitis[4] which are common conditions, even if worrisome to Mr. Stoneburner. In fact, Mr. Stoneburner, who bears the burden to demonstrate extraordinary and compelling reasons for his release, has not explained why those conditions are debilitating or particularly serious. In turn, the Court has reviewed the medical documents the parties submitted but cannot find any

---

[3] "Essential (primary) hypertension occurs when you have abnormally high blood pressure that's not the result of a medical condition. This form of high blood pressure is often due to obesity, family history and an unhealthy diet. The condition is reversible with medications and lifestyle changes." Cleveland Clinic—Primary Hypertension, https://my.clevelandclinic.org/health/diseases/22024-primary-hypertension-formerly-known-as-essential-hypertension (last visited September 4, 2024).

[4] "Ulcerative colitis is a chronic inflammatory bowel disease (IBD) in which abnormal reactions of the immune system cause inflammation and ulcers on the inner lining of your large intestine." National Institute of Diabetes and Digestive and Kidney Diseases—Ulcerative Colitis, https://www.niddk.nih.gov/health-information/digestive-diseases/ulcerative-colitis#:~:text=Ulcerative%20colitis%20is%20a%20chronic,ages%20of%2015%20and%2030 (last visited September 4, 2024).

indications that his hypertension or ulcerative colitis are not properly managed or that the treatments are ineffective.[5]

Simply put, none of Mr. Stoneburner's ailments by themselves, or combined with each other, are such that they would warrant a reduction in sentence. Mr. Stoneburner has not shown that his medical conditions constitute "a terminal illness," § 1B1.13(b)(1)(A), or "substantially diminish[] [his] ability to provide self-care within the environment [of the BOP] and from which he . . . is not expected to recover," § 1B1.13(b)(1)(B). Next, although Mr. Stoneburner questions the quality of the medical providers available to him and points to scheduling delays, he has not established that he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death." § 1B1.13(b)(1)(C). Again, there's no indication that either the basal cell carcinoma or ulcerative colitis have placed his health or life in serious risk. The medical notes from August 1, 2023, state that he was referred for an MRI to rule out a malignancy in the liver but there is no finding of actual malignancy. Instead, the note indicates that he will be referred for surgery for further exploration. (Med. Record, DE 71 at 12.) What's more, on June 22, 2023, Mr. Stoneburner told the medical provider that "since starting adalimumab his UC symptoms are 'a whole hell of a lot better.'" (*Id.* at 21.) In addition, Mr. Stoneburner denied having "pain, visual loss, dizziness, [fainting], chest pain with or without exertion, dyspnea, abdominal pain,

---

[5] Mr. Stoneburner's medical record consists of 159 pages (see DE 79), yet his briefs do not cite to any particular parts of the record; so the Court is left on its own to find the relevant documents, assuming they even exist. While the Court is mindful of Mr. Stoneburner's *pro se* status, all litigants are expected to back up their claims with particular references to evidence. *Cf. Trosper v. Saul*, 2021 U.S. Dist. LEXIS 88759, *4 (N.D. Ill. May 10, 2021) ("Under Seventh Circuit precedent, this Court must 'liberally construe' claims brought by pro se litigants. However, pro se litigants must still 'present arguments supported by citations to the record and legal authority.'" (quoting *Jackson v. Astrue*, 472 Fed. App'x 421, 422 (7th Cir. 2012)).

fever, joint swelling, muscle aches" and alike. (*Id.*) He also denied medication side-effects . . . depressive symptoms, anhedonia, lack of appetite, sleeping problems, depressed mood, suicidal ideation, homicidal ideation." (*Id.*) And there's nothing in the record suggesting that Mr. Stoneburner's condition significantly worsened after the June medical visit. As for scheduling doctor appointments for diagnostic and follow up care, even if Mr. Stoneburner is right that his medical care at home would be more efficient and consistent, he has failed to show that his situation is radically different from that of many prisoners at the BOP. Nor has he convinced the Court that the mere fact that he was imprisoned during the Covid-19 pandemic warrants a reduction in sentence.[6]

There's one more thing that needs to be noted. To the extent that Mr. Stoneburner may believe that § 3582(c)(1)(A)(i) supplies its own definition of "extraordinary and compelling reasons," the statute "instructs that a reduction must also be 'consistent with applicable policy statements issued by the [United States] Sentencing Commission.'" *United States v. Johnson*, 2024 U.S. Dist. LEXIS 124807, *4 (E.D. Wisc., July 16, 2024). "In 2020, the Seventh Circuit held that the relevant policy statement, U.S.S.G. § 1B1.13, was inapplicable to prisoner-initiated motions for compassionate release." *Id*. (quoting *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)). However, since the amendments to § 1B1.13 on November 1, 2023, that appears to be no longer the case. U.S. SENT'G COMM'N, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index 7 ("Among other things, the amendment extends the applicability of the policy statement to defendant-filed motions . . . ."); *see also Johnson*, 2024 U.S. Dist. LEXIS 124807, *5 ("Thus, it appears that the

---

[6] The Court also notes that none of the other factors in § 1B1.13 are in play. Mr. Stoneburner is not of advanced age; he has not shown that he has unique family circumstances requiring his release; and there are no allegations that he is a victim of physical or sexual abuse at the BOP.

Seventh Circuit's prior determination of inapplicability of the policy statement will change." (citing *United States v. Thacker*, 4 F.4th 569, 573 (7th Cir. 2021) ("[U]ntil the . . . Commission updates its policy statement to reflect prisoner-initiated compassionate release motions, district courts have broad discretion to determine what else may constitute 'extraordinary and compelling reasons' warranting a sentence reduction."). But no matter where the Court draws its definition of "extraordinary and compelling reasons," the evidence presented by Mr. Stoneburner falls short of requiring his release or reduction in sentence. Besides, the Court has considered the catchall provision under § 1BG.1.13(b)(5), *see supra* at 6, finding no justification for granting his motion.

But even if Mr. Stoneburner had established extraordinary and compelling reasons for compassionate release, the Court would nevertheless deny the motion in light of the § 3553(a) factors which it must consider as part of its determination. Mr. Stoneburner is in his mid-forties. Beginning in 2015 and over the next two years, Mr. Stoneburner used his phone to trade child pornography files (images and videos) with others. Investigators found 69 videos and 270 images of child pornography on his phone. At least one of those videos contained sadistic conduct, in which a child was sexually tortured. One video depicted a 10-year-old being sexually abused by an adult. Mr. Stoneburner's conduct was not a one-time lapse in judgment, and it was very serious. After all, the children depicted in the pornographic images not only suffer through the making of the pornography but continue to be victimized whenever these materials are viewed. Yet Mr. Stoneburner showed no regard to the victims' suffering and the continuous dehumanization that they have to live through. The Court is aware of the added hardships that prisoners experience. Even so, the Court finds that the nature of Mr. Stoneburner's criminal conduct, the need to reflect the seriousness of the offense, to promote respect for the law, and to

provide just punishment for the offense, as well as the importance of deterring crimes against children—among other § 3553(a) factors—outweigh any mitigating circumstances for early release.

### D. Conclusion

For these reasons, the Court DENIES Mr. Stoneburner's motion for compassionate release or reduction in sentence (DE 64). Given the ongoing nature of his care, should new medical circumstances arise that establish the extraordinary and compelling reasons for his release, Mr. Stoneburner may file another motion once exhausting his administrative remedies.

SO ORDERED.

ENTERED: September 11, 2024

                                                /s/ JON E. DEGUILIO
                                                Judge
                                                United States District Court